IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, IN HIS CAPACITY §
AS COURT-APPOINTED RECEIVER §
FOR THE STANFORD RECEIVERSHIP §
ESTATE, *et al.*, §
§
    Plaintiffs, §
§
v. §     Civil Action No. 3:13-CV-3980-N
§
WILLIS OF COLORADO INC., *et al.*, §
§
    Defendants. §

## ORDER

This order addresses Defendants Willis Ltd., Willis North America, Inc., and Willis

of Colorado, Inc.'s (collectively, "Willis") motion to dismiss [19]; Defendant Amy

Baranoucky's motion to dismiss [25]; Defendant Bowen, Miclette & Britt, Inc's ("BMB")

motion to dismiss [30], and Defendant Robert S. Winter's motion to dismiss [32].[1] For the

reasons that follow, the Court grants in part and denies in part Defendants' motions.

---

[1]Defendant Willis Group Holdings Ltd. has also filed a motion to dismiss for lack of personal jurisdiction [22] and Defendant Baranoucky also alleges this Court lacks personal jurisdiction. However, the parties have agreed to defer consideration of the jurisdictional question, *see* Stip. Staying Briefing Deadlines [42], so those issues will not be addressed here. The Court accordingly considers only Baranoucky's Rule 12(b)(6) arguments for dismissal. The remainder of Baranoucky's motion remains pending.

## I. THE NATURE OF THE ACTION

This case relates to the Securities and Exchange Commission's ("SEC") ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control.  As part of that litigation, this Court assumed exclusive jurisdiction and took possession of the "Receivership Assets" and "Receivership Records" (collectively, the "Receivership Estate").  *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).  The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order.  *Id.* at 3. Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."  *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshal, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate."  *Id.* at 5.

Pursuant to those powers, the Receiver and the Official Stanford Investors Committee ("OSIC"), along with Samuel Troice and Manuel Canabal, who seek to certify a class of investors, (collectively, "Plaintiffs") filed this suit against former insurance brokers for the Stanford enterprise – Willis of Colorado, Inc., Willis Ltd., Willis North America, Inc., Willis Group Holdings Ltd., and Bowen, Miclette & Britt, Inc. – as well as former employees of the brokers, Amy Baranoucky and Robert S. Winter.

The Receiver and OSIC seek to recover under various theories: (1) aiding, abetting, or participation in breaches of fiduciary duties; (2) negligence; (3) fraudulent transfer/unjust enrichment; (4) aiding, abetting, or participation in a fraudulent transfers; (5) negligent retention/negligent supervision; and (6) civil conspiracy.  OSIC, on its own, asserts the same claims against Defendant Winter.

Class Plaintiffs Troice and Canabal bring claims against only Defendant Willis North America, Ltd. ("Willis NA") for (1) primary violations of the Texas Securities Act ("TSA"); (2) aiding and abetting violations of the TSA; (3) participation in a fraudulent scheme; (4) civil conspiracy; (5) various violations of the Texas Insurance Code ("Insurance Code"); (6) common law fraud; (7) negligent misrepresentation; (8) negligence/gross negligence; and (9) negligent retention/negligent supervision.

The facts supporting Plaintiffs' claims are complex.  At root, Plaintiffs allege that the broker Defendants and their employees participated in and contributed to the Stanford Ponzi scheme by knowingly providing misleading "safety and soundness" letters, i.e., letters attesting to Stanford's insurance coverage, which Defendants knew would be distributed to

Stanford's investors.  Plaintiffs allege the success of the Stanford Ponzi scheme was predicated on the  deceptive use of insurance coverage to market the Stanford certificates of deposit ("CDs"), and that, at the very least, Defendants were aware that their safety and soundness letters were being used improperly, yet continued to provide them.  Defendants assert a number of arguments for dismissal based on standing, *in pari delicto*, the statute of limitations, and general failure to meet the pleading requirements of Federal Rules 9(b) and 12(b)(6).

## II.  THE LEGAL STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and

transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. WILLIS'S CAUSATION DEFENSE

As an initial matter, Willis asserts that Plaintiffs' failure to allege causation requires dismissal of a number of their claims. Willis bases its argument on the general rule that "criminal conduct of a third-party is a superseding cause that extinguishes the liability of the previous actor." *Garcia v. El Paso Ltd. P'ship*, 203 S.W.3d 432, 436 (Tex. App. – El Paso 2006, no pet.). However here, Plaintiffs' allegations support the reasonable conclusion that Stanford's criminal and otherwise wrongful conduct was a foreseeable result of Willis's alleged actions, and thus not a superseding cause. *See J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 665 (Tex. App. – Fort Worth 1999, pet. denied) (holding "if an intervening cause was reasonably foreseeable by the defendant in the exercise of ordinary care, it cannot be considered a new and independent cause that will break the chain of causation."). According to the well-pled allegations in the first amended complaint, Stanford's conduct was foreseeable, not based on "an extraordinary series of events," *Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 462–63 (Tex. App. – Houston [1st Dist.] 2008, pet. denied), but was rather the natural and even intended result of Willis's conduct. Plaintiffs allege Willis had sufficient knowledge concerning the nature of Stanford's investment strategies to conclude that investors were being misled. Its continued provision of the safety and soundness letters is therefore not so remote from Stanford's unlawful conduct that the chain of causation is broken.

## IV. THE RECEIVER/OSIC'S CLAIMS

Both the Receiver and OSIC (collectively, "Nonclass Plaintiffs") assert claims against Willis, Baranoucky, and BMB for (1) aiding, abetting, or participation in breaches of fiduciary duties; (2) negligence; (3) fraudulent transfer/unjust enrichment; (4) aiding, abetting, or participation in fraudulent transfers; (5) negligent retention/negligent supervision; and (6) civil conspiracy.  Only OSIC asserts these claims against Defendant Winter.

The Court notes at the outset that BMB's blanket defenses do not apply to Nonclass Plaintiffs' claims.  BMB argues that (1) SIBL's disclosure statements issued to investors bar Plaintiffs' claims, and (2) BMB's provision of safety and soundness letters from 1996-2004 could not have caused Plaintiffs' harm.  These arguments on their face apply only to Class Plaintiffs' claims, and BMB does nothing to connect them to Nonclass Plaintiffs' claims, which are based on the harm incurred by the Receivership Estate.  Class Plaintiffs do not assert claims against BMB in this action.  Accordingly, these two arguments are inapplicable to the current action.

### A. Common Law Tort Claims

*1. Nonclass Plaintiffs Have Standing. –* In *Janvey v. Democratic Senatorial Campaign Committee*, the Fifth Circuit explicitly held that "a federal equity receiver has standing to assert only the claims of the entities in receivership, and not the claims of the entities' investor-creditors."  712 F.3d 185, 190 (5th Cir. 2013); *see also Scholes v. Schroeder*, 744 F. Supp. 1419, 1422 (N.D. Ill. 1990) ("[F]raud on the *receivership entity* that

operates to *its* damage is for the *receiver* to pursue. . . ." (emphasis in original)).  "Whether a claim belongs to the estate depends on whether, under state law, the receivership entity could have raised the claim."  Sept. 11, 2013 Order 8, *in Janvey v. Adams & Reese, LLP*, Case No. 3:12-CV-0495-N (N.D. Tex. Filed Feb. 16, 2012) (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008)) (the "*Adams & Reese* Order").  Defendants argue the Nonclass Plaintiffs' common law tort claims belong to the investors, not to the Receivership Estate, and that Nonclass Plaintiffs thus lack standing.  The Court disagrees.

The Court finds the standing analysis performed in the *Adams & Reese* Order applicable to the Nonclass Plaintiffs' common law tort claims here.  In *Adams & Reese*, this Court found the Receiver had standing to assert claims against director and lawyer defendants for failing to "stop Stanford from controlling his entities to perpetuate his fraud . . . , causing injury to [Stanford] entities."  *Id.* at 9.  The Court reasoned that because the defendants' alleged conduct "harmed the Stanford Entities' ability to repay their creditor-investors," the Receiver's claims properly belonged to the Receivership Estate.  *Id.*; *see also Mosier v. Stonefield Josephson, Inc.*, 2011 WL 5075551, at *3-4 (C.D. Cal. 2011) (applying similar reasoning to find standing for receiver's claims against accounting firm that aided in concealing receivership entity's misconduct).  Here, the same theory applies to the Nonclass Plaintiffs' common law tort claims because they allege that Defendants' participation in a fraudulent marketing scheme increased the sale of Stanford's CDs, ultimately resulting in greater liability for the Receivership Estate.

Defendants' attempt to distinguish *Adams & Reese* is unavailing. Defendants argue that this action is distinguishable because in *Adams & Reese*, the Receiver's claims were against director and lawyer defendants who were in a position to stop the Stanford insiders' diversion of assets. While the *Adams & Reese* Order did rely on the defendants' failure to stop the Stanford scheme, failing to stop a scheme is only one way a defendant might contribute to a receivership estate's liabilities. Here, though Nonclass Plaintiffs do not allege Defendants were in a position to stop the scheme, they do allege that Defendants knowingly contributed to the growth and success of the scheme, thereby increasing the Receivership Estate's liability to its creditors. For the purposes of standing, that is enough to state an injury to the Receivership Estate under the *Adams & Reese* Order.[2]

  **2. In Pari Delicto *Does Not Bar the Nonclass Plaintiffs' Claims*.** – The *in pari delicto* defense "is based on the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *In re Royale Airlines, Inc.*, 98 F.3d 852, 855 (5th Cir. 1996). This Court has already held that the *in pari delicto* defense has little application when a receiver seeks to reclaim assets for innocent investors. *See Adams & Reese* Order at 5–8; *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) ("[I]t is well established that 'when the receiver acts to protect innocent creditors . . . he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so.'" (quoting *Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, 2003 WL

---

  [2]The Court also rejects BMB's arguments concerning the Receiver's standing under the August 10, 2010 Order [1149], *in SEC v. SIB*.

21025030, at *5 (Tex. App. – Austin 2003, no pet.))).  Defendants argue that consideration of the equities and certain distinctions from the facts in *Adams & Reese* compel a different result here.  The Court disagrees.

Defendants argue that *Adams & Reese* is distinguishable because defendants there had a higher degree of culpability in the facilitation of the scheme than do Defendants in this case.  Defendants also assert a variety of public policy arguments supporting *in pari delicto*, including that (1) Defendants here did not know about the fraud and at worst are guilty of negligence; (2) public policy disfavors the Receiver's suit against an allegedly equally culpable party; and (3) Stanford's investor-creditors are capable of bringing suit on their own.  The Court finds these arguments unconvincing.  First, whether Defendants knew about the fraud or not is a fact question inappropriate for resolution on a motion to dismiss. Second, the cases Defendants cite in support of their second argument are not binding on this Court, and do not outweigh the Fifth Circuit's holding that generally, *in pari delicto* does not apply where a Receiver seeks recovery for innocent investors.  *See Jones*, 666 F.3d at 966. Nonclass Plaintiffs allege Defendants participated substantially in the fraudulent scheme, and the Court finds no reason to shield Defendants from potential liability because they were allegedly only "merely equally" culpable.  Finally, although some investors have indeed shown themselves capable of bringing suit against Defendants, a great many have not.  The Receiver seeks recovery for all injured investors, and *Jones* provides that in such cases, *in pari delicto* should not operate to bar a receiver's suit.  Accordingly, the Court finds neither *in pari delicto* nor the Texas "unlawful acts" doctrine bar the Receiver's claims.

**3. *Nonclass Plaintiffs Fail to Plead Scienter as to Certain Claims.*** – Defendants argue Nonclass Plaintiffs' tort claims must be dismissed for failure to plead scienter. Claims for aiding and abetting or participation in breach of fiduciary duty and civil conspiracy are subject to Federal Rule of Civil Procedure 9(b) and thus must be pled with particularity. *See Tigue Investment Co v. Chase Bank of Texas*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). The Court agrees with Defendants' arguments but only as to Nonclass Plaintiffs' civil conspiracy claims.

Nonclass Plaintiffs' fail to plead claims for civil conspiracy. In order to be liable for civil conspiracy, a defendant "must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Commc'n*s, *Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Civil conspiracy requires specific intent to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Juhl v. Arrington*, 936 S.W.2d 640, 644 (Tex. 1996) (citation omitted). Indeed, *Juhl* expressly rejects Plaintiffs' argument that a claim for civil conspiracy can rest on allegations of gross negligence. *See id.*

Nonclass Plaintiffs fail to allege facts suggesting that Defendants were subjectively aware of and had intent to achieve an unlawful purpose at the inception of their relationships with Stanford. Though Nonclass Plaintiffs plead that Defendants became aware of Stanford's unlawful conduct over the course of the relationship, the charge of civil conspiracy requires more. Nonclass Plaintiffs fail to set forth with particularity facts

establishing Defendants entered into a civil conspiracy to commit the fraudulent conduct alleged in the complaint.

Defendants argue Nonclass Plaintiffs' remaining tort claims must be dismissed because Nonclass Plaintiffs are judicially estopped from arguing Defendants had knowledge of the Stanford Ponzi scheme. Defendants rely on language from the Fifth Circuit's decision in *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir. 2013), in which the Receiver defeated summary judgment by arguing the Stanford scheme was totally undetectable to outsiders:

> The evidence reflects that upon the Receiver's appointment on February 16, 2009, it was not readily evident to him or to anyone not privy to the inner workings of the Stanford corporations that these entities were part of a massive Ponzi scheme perpetrated by Stanford beginning as early as 1999. . . . [W]ithout an expert's examination of the corporations' books and records, no outsider, including the SEC, could have known or discovered probative evidence that Stanford had operated a Ponzi scheme from at least 1999 forward[.]

*Id.* at 196-97.

The Court holds Nonclass Plaintiffs are not judicially estopped from arguing Defendants had knowledge of the Stanford Ponzi scheme. The Receiver's arguments concerning knowledge in *Democratic Senatorial Campaign Comm.* were facially limited to "outsiders." The complaint in this action alleges that Defendants were in fact "privy to the inner workings" of the Stanford entity and therefore do not fall within the scope of the Receiver's *DSCC* knowledge arguments. *See, e.g.*, First Am. Compl. ("FAC") ¶ 48 ("Indeed, perhaps no other third party had as much knowledge of Stanford Financial's worldwide

operations as BMB and Willis, precisely because it was their job, as insurance and risk managers, to have a thorough understanding of Stanford Financial's operations.").

Moreover, the Receiver's tort claims are not necessarily based on knowledge that Stanford was running a massive Ponzi scheme, but instead on knowledge that the safety and soundness letters were being improperly used to market the Stanford CDs. Regardless of whether Defendants knew of the existence, size, or scope of the Ponzi scheme, it is sufficient for the Receiver's tort claims to allege, for instance, that Defendants knew "Stanford's rampant spending on Antiguan real estate development projects was not consistent with what was being disclosed to Stanford International Bank's ("SIBL") clients." FAC ¶ 55. The first amended complaint is rife with particular allegations that Defendants knew and overlooked the fact that Stanford entities were not being forthcoming with their investors about where their CD proceeds were being invested. Such allegations are sufficient to support the Receiver's remaining tort claims.

*4. The Statute of Limitations Does Not Bar Nonclass Plaintiffs' Tort Claims.* – Generally, it is inappropriate to dismiss a claim under Rule 12(b)(6) based on limitations. *See, e.g.*, *Bowman v. Sanofi-Aventis U.S.*, 2009 WL 5083431, at *3 (W.D. Tex. 2009) (citing *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983)). "A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Glover v. Raytheon Co.*, 2013 WL 5744361, at *3 (N.D. Tex. 2013). Nonclass Plaintiffs allege their claims against Defendants were inherently

undiscoverable "given the magnitude and complexity of the Stanford Ponzi scheme and the volume of records that were required to be reviewed and analyzed . . . ."  FAC ¶ 134. Defendants fail to present the proof necessary to grant a dismissal of Plaintiffs' negligence claims and breach of fiduciary duty claims.  The Court holds Plaintiffs have adequately invoked the discovery rule at this stage of the proceedings.

   *5.  The Court Denies BMB's Motion as to Negligent Retention/Negligent Supervision.* – The Court holds Plaintiffs plead sufficient facts to support claims for negligent retention/negligent supervision against BMB.  BMB argues that Plaintiffs' failure to respond specifically to BMB's arguments concerning its employment of Winter mandates dismissal of those claims.  However, Plaintiffs clearly allege in their complaint that BMB knew or should have know Winter was issuing the fraudulent safety and soundness letters on BMB letterhead.  *See* FAC ¶ 151.  The Court thus declines to dismiss the negligent retention/negligent supervision claim against BMB.

   *6. The Court Grants Baranoucky's Motion as to Negligent Retention/Negligent Supervision.* – However, the Court grants Defendant Baranoucky's motion to dismiss as to Nonclass Plaintiffs' negligent retention/negligent supervision claims.  As a matter of logic, Baranoucky cannot be held liable for negligently retaining and supervising herself as an employee.  Plaintiffs do not contest this argument or suggest any authority supporting an employee's liability for her own retention under this cause of action.  Accordingly, the Court dismisses Nonclass Plaintiffs' negligent retention/negligent supervision claims as asserted against Baranoucky.

### B. The Fraudulent Transfer Claims

Defendants Willis and BMB move to dismiss Nonclass Plaintiffs' fraudulent transfer claims based on the affirmative defenses of limitations and statutory good faith. Baranoucky argues Nonclass Plaintiffs fail to adequately plead these claims against her. The Court addresses each argument in turn.

### 1. Factual Questions Remain as to the Application of the Statute of Limitations. –

The Texas Uniform Fraudulent Transfer Act (TUFTA) provides that fraudulent transfer claims must be brought "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Tex. Bus. & Com. Code Ann. § 24.010(a)(1). Application of the TUFTA "discovery rule" is a factual question generally inappropriate for resolution on a motion to dismiss. *See Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, 2014 WL 1245071, at *17 (N.D. Ill. 2014) ("Whether Plaintiff reasonably should have discovered the fraudulent transfers earlier is a question of fact, to be resolved by a jury (or on a summary judgment record)." (citing *Duran v. Henderson*, 71 S.W.3d 833, 839 (Tex. App. – Texarkana 2002, pet. denied))).

Nonclass Plaintiffs' adequately plead facts supporting application of the discovery rule to survive a motion to dismiss their TUFTA claims. Nonclass Plaintiffs allege that their TUFTA claims were inherently undiscoverable "given the magnitude and complexity of the Stanford Ponzi scheme and the volume of records that were required to be reviewed and analyzed for the purposes of determining the causes of action that could be asserted . . . ." FAC ¶ 134. This allegation is sufficient at this stage to preclude dismissal. There exists a

factual question as to when the Receiver should have discovered his TUFTA claims.  The Court holds dismissal based on limitations is thus inappropriate.

### 2. Factual Questions Remain as to Defendants' Good-Faith Defense. – TUFTA

provides that an otherwise fraudulent transfer is not voidable if the recipient "took in good faith and for a reasonably equivalent value . . . ." TEX. BUS. & COM. CODE ANN. § 24.009(a). Nonclass Plaintiffs allege sufficient facts concerning Defendants' bad faith to overcome dismissal on this basis.  Nonclass Plaintiffs allege that Defendants had access to Stanford's otherwise private financial information, *see* FAC ¶ 48, and that Defendants knew Stanford's CD proceeds were being used to invest in Antiguan real estate ventures, *see id.* ¶¶ 55, 68. These allegations, accepted as true, suffice to preclude Defendants' reliance on the good faith defense at this stage.[3]

Finally, the Court denies Willis and BMB's motions to dismiss Nonclass Plaintiffs' claim for aiding and abetting fraudulent transfers.  Nonclass Plaintiffs allege sufficient facts supporting Defendants' knowledge that the safety and soundness letters were being used to mislead investors into purchasing Stanford CDs, *see, e.g.*, FAC ¶ 50, and that Defendants nevertheless continued to provide the letters.  The Court accordingly finds dismissal of the aiding and abetting fraudulent transfer claims inappropriate.

### 3. The Court Dismisses Nonclass Plaintiffs' Fraudulent Transfer Claims Against

**Baranoucky.** – Nonclass Plaintiffs fail to plead that Baranoucky received fraudulent transfers from Stanford, or that she aided and abetted Stanford's fraudulent transfers to third-parties.

---

[3]For the same reasons, the Court denies Defendants' motion to dismiss the Receiver's "fallback claims" based on unjust enrichment and money had and received.

Nonclass Plaintiffs do not contest Baranoucky's arguments as to this deficiency in their pleadings. Accordingly, the Court dismisses Nonclass Plaintiffs' claims for fraudulent transfer and aiding and abetting fraudulent transfer against Baranoucky.

## V. THE CLASS PLAINTIFFS' CLAIMS

Class Plaintiffs Troice and Canabal bring claims for (1) primary violations of the TSA; (2) aiding and abetting violations of the TSA; (3) participation in a fraudulent scheme; (4) civil conspiracy; (5) misrepresenting the benefits of insurance policies under the Insurance Code; (6) misrepresenting the name or title of insurance policies under the Insurance Code; (7) false information and advertising under the Insurance Code; (8) misrepresentation of a policy of insurance under the Insurance Code; (9) common law fraud; (10) negligent misrepresentation; (11) negligence/gross negligence; and (12) negligent retention/negligent supervision. Class Plaintiffs assert their claims in this action only against Willis NA.

### A. The Court Declines to Dismiss Class Plaintiffs' Claims For Improper Claim Splitting

Willis NA urges that this action is duplicative of Class Plaintiffs' action filed against other Willis entities in *Troice v. Willis*, Civil Action No. 09-CV-1274 (N.D. Tex. filed July 2, 2009), and should thus be dismissed for improper claim splitting. Under principles of judicial economy, federal courts have discretion to manage their dockets by dismissing claims that are duplicative of claims raised in simultaneous actions. *See* 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4406 (2d ed. 2014). Where the facts of two simultaneous actions overlap, courts may also manage the risk of inconsistent or

duplicitous rulings by consolidating the two actions. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2014 WL 4693068, at *5 (E.D. La. 2014). Here, the two related cases have been consolidated before this Court. *See* Mar. 28, 2014 Stipulation [45]. At this time, the Court finds the consolidation sufficient to conserve judicial resources and declines to dismiss the action on that ground.

### B. The Court Dismisses Class Plaintiffs' Civil Conspiracy Claim

The Court holds Class Plaintiffs fail to adequately plead the level of scienter required to state a claim for civil conspiracy against Willis NA. In order to be liable for civil conspiracy, a defendant "must be aware of the harm or wrongful conduct at the inception of the combination or agreement." *Triplex Commc'n*s, 900 S.W.2d at 719. Civil conspiracy requires specific intent to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Juhl*, 936 S.W.2d at 644 (citation omitted). As previously noted, *Juhl* expressly rejects Class Plaintiffs' argument that a claim for civil conspiracy can rest on allegations of gross negligence. *See id.*

Class Plaintiffs do not allege that Willis NA was subjectively aware of and had intent to achieve an unlawful purpose at the inception of its relationship with Stanford. Though Class Plaintiffs plead that Willis NA became aware of Stanford's unlawful conduct over the course of the relationship, the charge of civil conspiracy requires more. Class Plaintiffs fail to plead facts supporting the conclusion that Willis NA and Stanford intended to violate the TSA or commit fraud from the moment their business relationship began. The Court

dismisses Class Plaintiffs' standalone civil conspiracy claim, as well as their claim for co-conspirator liability under the TSA.

### C. The Class Plaintiffs' Texas Securities Act Claims

*1.* **Morrison v. National Australia Bank Ltd.** *Does Not Necessarily Prevent Extraterritorial Application of the TSA.* – In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), the Supreme Court held that section 10(b) of the Securities Exchange Act does not apply extraterritorially. *Id.* at 265. The Court based its decision on the principle of statutory interpretation "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.* at 255 (citation omitted) (internal quotation marks omitted). Defendants contend that the *Morrison* decision, though never addressed by Texas courts, should apply to preclude application of the TSA here. *Morrison* does not necessarily control here.

The Texas Supreme Court's opinion in *Citizens Insurance Co. of America v. Daccach*, 217 S.W.3d 430 (Tex. 2007), provides a more comprehensive and relevant model for determining the applicability of the TSA to this case. There, the court considered whether the TSA's registration requirements could apply extraterritorially to claims based on securities sold from Texas to purchasers abroad. *Id.* at 439–40. In analyzing the question, the court's primary consideration was, "under principles of statutory interpretation, whether the [] defendants' actions in Texas constitute conduct the Legislature intended to regulate." *Id.* at 442. Though the Court acknowledged that "violations of other securities laws, such as those based on misrepresentation, may well be subject to a different analysis[,]" *id.* at 441, it ultimately concluded that "the Texas Legislature intended section 12 of the [TSA] to

prohibit the unregistered sale of securities from Texas, even when the purchasers are nonresidents." *Id.* at 446.

The *Daccach* Court's reliance on comparisons to the Uniform Securities Act of 1956 convinces this Court that the result should be the same here.  The Uniform Securities Act, on which the TSA is substantially based, *id.*, provides that a particular state's laws should apply to a transaction if the "wrongful acts in the transaction occurred" in the particular state. *Id.* at 445 (citing JOSEPH C. LONG, 12 BLUE SKY LAW § 4:2 (rev. ed. 1988)).  Moreover, other rationales supporting the *Daccach* decision – "creat[ing] an incentive for [the TSA's] private enforcement," and "guard[ing] the integrity of the state's securities industry by protecting resident sellers who operate in compliance with the law[,]" 217 S.W.3d at 440, – apply with equal force to Class Plaintiffs' TSA claims here.

Accordingly, the Court holds that Willis NA has failed to carry its burden in showing that the TSA sections on which Class Plaintiffs base their claims do not have extraterritorial application.  Though not based on the same TSA provisions at issue here, *Daccach* provides a strong indication that the Texas Legislature intended the TSA to apply to transactions emanating from within Texas.  Here, Class Plaintiffs allege that Stanford's base of strategic operations was located within Texas, and that Willis NA drafted and provided the safety and soundness letters to Stanford within Texas.  FAC ¶¶ 26-27, 76, 78.  This is a sufficient nexus for the Court to hold at this stage that the TSA applies to these claims.

Finally, the Court holds that *Morrison* does nothing to alter this analysis.  *Morrison* explicitly applied to the federal Securities Exchange Act, was not decided on Constitutional grounds, and did not rely on reasoning that would necessarily alter the *Daccach* Court's own

analysis of the analogous Texas statute.  Moreover, even if it did implicate *Daccach*'s analysis, this Court would be wary to depart from Texas Supreme Court precedent on a question of state law without the benefit of any Texas court's consideration of *Morrison*'s impact.

*2. The Court Dismisses Class Plaintiffs' Claims for Primary Liability Under the TSA.* **–** Class Plaintiffs bring a statutory claim against Willis NA for a primary violation of Section 33A(2) of the TSA.  A primary violator under section 33A(2) is a person who "offers or sells a security . . . by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."  TEX. REV. CIV. STAT. ANN. art. 581-33A. Willis NA contends it cannot be held liable as a primary violator of this provision because it is not a statutory "seller."  The Court agrees.

Courts interpreting the TSA have typically defined "seller" in a way that implies privity between the party to be held liable and the purchaser of the security.  For instance, a seller is a "person who sold the security directly to the purchaser or who acted as the vendor's agent and solicited the sale."  *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 540 F. Supp. 2d 759, 767 (S.D. Tex. 2007).  Other courts have held that "to impose seller liability under Section 33A(2), a plaintiff must be in privity with defendant . . . ."  *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 741 (Tex. App. – Houston [1st Dist.] 2012, no pet.) (citing *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 383 (Tex. App. – Houston [14th Dist.] 2000, pet. denied)).  Most applicable to Class Plaintiffs' claims here, a seller "can include '[a] person who successfully solicits the purchase, motivated at least in

part by a desire to serve his own financial interests or those of the securities owner,' such as a broker." *Highland Capital*, 402 S.W.3d at 742 (citing *Pinter v. Dahl*, 486 U.S. 622, 646–47 (1988)).

In construing the TSA, Texas courts also consider interpretations of analogous federal laws, *see Highland Capital*, 402 S.W.3d at 741, which similarly limit the extent to which a plaintiff may assert claims against a nonprivy defendant as a primary violator. *See, e.g.*, *Zupnick v. Thompson Parking Partners, Ltd. P'ship III*, 1990 WL 113197, at *11–13 (S.D.N.Y. 1990) (discussing generally the problems with extending "seller" status to professionals associated with a securities transaction under the Securities Act; holding *Pinter's* financial interest requirement required allegation that seller received a sales commission); *Buford White Lumber Co. Profit Sharing & Sav. Plan & Trust v. Octagon Props, Ltd.*, 740 F. Supp. 1553, 1558–59 (W.D. Okla. 1989) (holding despite his ability to disseminate material information to a purchaser, lawyer preparing offering memorandum was not a seller).   Indeed, the Court is aware of two cases considering and rejecting primary "seller" liability for an insurance broker under the federal Securities Act. *See In re Ethanol Plants Sec. Litig.*, 1989 U.S. Dist. LEXIS 13717 (W.D. Mo. 1989); *Commins v. Johnson & Higgins, Inc. of Texas*, 1988 U.S. Dist. LEXIS 15574 (N.D. Cal. 1988). *Commins* especially is instructive, as there the court held that despite material misrepresentations, an insurance broker was not a seller because it was not actually involved in the sales transactions.   1988 U.S. Dist. LEXIS 15574 at *5–6.

The Court concludes that Willis NA cannot here be held liable as a "seller" under the TSA.  Willis NA was not a party to any transaction in which Stanford CDs were sold, nor did

it stand in privity to SIBL investors.  Even assuming, as Class Plaintiffs allege, that Willis NA knew its letters were being used to market Stanford CDs to investors, there is no indication Willis NA stood to benefit financially in the form of a commission from the sales. As in *Commins*, even though Willis NA is alleged to have disseminated materially misleading information related to the CDs, it cannot be said to have inhabited the position of a "seller" for purposes of the TSA.  The Court thus dismisses Class Plaintiffs' claims for primary violations of TSA section 33A.

*3. Class Plaintiffs Adequately Plead Fraudulent Intent as to Secondary Violations of the TSA.* – To state a claim for a secondary violation of the TSA, Class Plaintiffs must plead that Willis NA "intended to deceive [Class Plaintiffs] or acted with reckless disregard for the truth of [Stanford's] misrepresentations." *Portfolio Equities*, 540 F.3d at 344 (quoting *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 388 F. Supp. 2d 780, 787 (S.D. Tex. 2005)).  Willis NA may be held liable as an aider only if "it rendered assistance 'in the face of a perceived risk' that its assistance would facilitate untruthful or illegal activity by the primary violator." *Sterling Trust Co. v. Adderly*, 168 S.W.3d 835, 842 (Tex. 2005) (citation omitted).  "In order to perceive such a risk, the alleged aider must possess a 'general awareness that his role was part of an overall activity that is improper.'" *Id.* (citation omitted).

Class Plaintiffs plead sufficient facts suggesting that Willis NA was generally aware of a risk of improper activity and continued to render assistance to Stanford.  For example, Class Plaintiffs allege Willis NA (1) knew Stanford was selling unregistered securities, FAC ¶ 180; (2) continued to provide safety and soundness letters to Stanford despite knowledge

that the letters were being used to mislead investors concerning the scope of insurance coverage for the CDs, *id.* ¶ 187; and (3) knew the letters contained misleading statements and omissions, *id.* ¶ 91. These allegations are sufficient to plead scienter for secondary violation of the TSA.[4]

**4. Class Plaintiffs Have Standing Under the TSA For Their Registration Claims**. – Willis NA contends that Class Plaintiffs' aiding and abetting sales of unregistered securities claims must be dismissed because the TSA requires the allegedly unregistered security transaction to have occurred in the state. Willis NA's argument has been rejected by a number of Texas courts. *See, e.g.*, *Texas Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 775 (Tex. App. – Houston [1st Dist.] 2001, pet. denied) (holding sale of unregistered security provisions of the TSA extend to transactions occurring outside the state). The fact that the transactions at the root of Class Plaintiffs' unregistered securities claims took part outside of Texas is thus no impediment to the viability of the claims.

**5. Class Plaintiffs' TSA Registration Claims Are Not Preempted by Federal Law.** – The National Securities Markets Improvement Act (NSMIA) preempts state claims requiring registration of a security if the claim is based on "a covered security." 15 U.S.C. § 77r(a)(1). Covered securities include those exempt from registration requirements under SEC Regulation D. *See* 17 C.F.R. § 230.500(a). Thus, if the Stanford CDs are exempt under Regulation D, then Class Plaintiffs' claims are preempted by the NSMIA.

---

[4]Willis NA challenges Class Plaintiffs' common law fraud, participation in a fraudulent scheme, and gross negligence claims under the same scienter argument. Based on these same allegations, Plaintiffs plead scienter for those claims as well.

The Regulation D exemption applies only to securities that "actually meet the conditions established by the SEC regulation . . . ." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 909 (6th Cir. 2007).  The Sixth Circuit in *Brown* so reasoned based on Congress's decision not to include broad preemptive language in its enactment of the NSMIA.  *Id.* at 911–12.  Based on the plain language of the NSMIA, this Court agrees with the Sixth Circuit's interpretation and holds that the "NSMIA preempts state securities registration laws with respect only to those offerings that actually qualify as 'covered securities' according to the regulations that the SEC has promulgated."  *Id.* at 912.

Class Plaintiffs allege noncompliance of the Stanford CDs with Regulation D.  For instance, Class Plaintiffs allege that tens of thousands of investors purchased SIBL CDs, which is inconsistent with the Regulation D requirement that no more than 35 purchasers take part in any offering from the issuer.  *See*  17 C.F.R. § 230.506(b)(2)(i); Pl.'s Opp. Mot. Dismiss 39 [48]; FAC ¶ 18.  Accordingly, taking Class Plaintiffs' well-pled facts as true, it is inappropriate to hold at this stage that Class Plaintiffs' TSA registration claims are preempted by the NSMIA.

### D. Class Plaintiffs' Texas Insurance Code Claims

***1. Willis NA Fails To Show the Texas Insurance Code Does Not Apply Extraterritorially.*** **–** The Court also finds sufficient language in the Texas Insurance Code to support its application to the claims here.  By its terms, the Insurance Code is intended to "defin[e] or provid[e] for the determination of *trade practices in this state* that are unfair methods of competition or unfair or deceptive acts or practices . . . ." TEX. INS. CODE. ANN. § 541.001 (emphasis added).  Class Plaintiffs' Insurance Code claims stem from practices

that occurred within the state.  Indeed, as discussed above, Class Plaintiffs allege that the safety and soundness letters were drafted in Texas and furnished to Stanford in Texas.  FAC ¶¶ 26–27, 76, 78.  Defendants do not make any showing that "trade practices" include only the actual transaction with the final customer.  Accordingly, the Court denies the motion to dismiss the Insurance Code claims under the extraterritoriality argument.

### 2. The Class Plaintiffs Have Standing to Assert Claims Under the Insurance Code.

– In order to bring a claim against an insurer under the Insurance Code, a third party must either (1) stand in privity of contract with the insurer; (2) be a third party beneficiary of the insurer's policy; or (3) have relied detrimentally on a representation of the insurer.  *See Palma v. Verex Assur., Inc.*, 79 F.3d 1453, 1457 (5th Cir. 1996); *Warfield v. Fid. & Deposit Co.*, 904 F.2d 322, 326–27 (5th Cir. 1990).  Class Plaintiffs argue they have standing because they detrimentally relied on Willis NA's representations.

The courts discussing reliance-based standing under the Insurance Code for third-parties have not articulated precise standards.  *See, e.g.*, *Serv. Cas. Ins. Co. v. The Travelers Co.*, 2004 WL 2218381, at *3-4 (W.D. Tex. 2004) (finding reliance-based standing where insurer made a statement to third-party that could be construed as a misrepresentation); *Walker v. State Farm Lloyd's*, 2004 WL 1462200, at *7-8 (N.D. Tex. 2004) (holding third party had standing if it could "demonstrate detrimental reliance on the words or deeds of [the insurer]").  Willis NA argues that standing based on reliance exists only where there is a "direct and close relationship" between the third-party and insured, which does not exist here.  *See* Willis's Reply 18 [55].  Although Willis NA is correct that courts have required a close relationship to support standing for a third-party, *see, e.g.*, *Walker*, 2004 WL 1462200

at *7, the language of those cases suggests that detrimental reliance suffices for a close relationship, not that a close relationship must exist on top of the third-party's detrimental reliance.  *See id.*

Class Plaintiffs allege sufficient detrimental reliance on Willis NA's words and deeds to support standing here.  Indeed, Class Plaintiffs allege Willis NA and Stanford purposefully utilized the safety and soundness letters to market securities to investors.  In alleging that Willis NA provided insurance letters for dissemination to investors knowing they were to be used as part of a misleading marketing scheme, Class Plaintiffs plead a sufficiently close relationship based on detrimental reliance to establish standing under the Insurance Code.

### E. Class Plaintiffs' Misrepresentation Claims

*1. Class Plaintiffs Plead Actionable Misrepresentations and Omissions.* – Willis NA challenges Class Plaintiffs' claims for fraud, negligent misrepresentation, and violation of the Insurance Code, arguing the complaint fails to allege a material misstatement or omission of fact.[5]  Class Plaintiffs allege material misrepresentations sufficient for each of these claims.

Class Plaintiffs' allegations that Willis NA's safety and soundness letters stated that SIBL was "comprised of first class business people," and that SIBL had qualified for its coverage by passing a "stringent Risk Management Review" are sufficient to state a claim for fraud, negligent misrepresentation, and misrepresentation under the Insurance Code.

---

[5]Willis NA also challenged Class Plaintiffs' claims for primary violations of the TSA on this basis, but because those claims have already been dismissed the Court need not consider them here.

Willis NA's cited cases are not to the contrary.  Willis NA argues that in Texas, a policyholder's mistaken belief about the scope of coverage is inactionable in the absence of a "specific misrepresentation."  Willis's Br. Supp. Mot. Dismiss 36 [20] (citing *Moore v. Whitnes-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App. – San Antonio 1998, no pet.)).  But Class Plaintiffs do allege that the letters contain specific misrepresentations and that Willis NA distributed them with knowledge that they were being used to mislead investors.

Willis NA argues these claims must also fail because the letters (1) do not contain any misrepresentations that are not mere puffery, and (2) were not written with knowledge of the falsity of any alleged misrepresentation.  The Court rejects the first contention because even opinions are actionable if the "speaker purports to have special knowledge of the facts, or does have superior knowledge of the facts . . . ."  *Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 219 (Tex. App. – Austin 1999, pet. denied).  Class Plaintiffs adequately allege that Willis NA had specialized knowledge that Class Plaintiffs lacked, including knowledge that the CD proceeds were being misused to invest in Antiguan real estate.  The Court rejects the second contention because this same knowledge that Class Plaintiffs allege Willis NA had concerning Stanford's operations supports the reasonable inference that Willis NA knew the statements in the letters were false, or at the least unsubstantiated.  Class Plaintiffs have alleged actionable misrepresentations.

Class Plaintiffs also allege actionable omissions.  Common law fraud claims may be based on an omission of material facts.  *See* TEX. REV. CIV. STAT. art. 581-33A(2); *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 213 (Tex. App. – Houston [14th Dist.] 2011,

no pet.) ("[W]hen one makes a partial disclosure and conveys a false impression, he has a duty to speak.").  Class Plaintiffs allege Willis NA knew Stanford was using its letters to deceive investors into believing the CDs were secure investments, and thus that the letters would create a false impression.  Plaintiffs' plead actionable omissions in alleging Willis failed to clarify that the coverages did not provide deposit insurance, and that the stated amounts of coverage left SIBL substantially underinsured.  *See* FAC ¶ 93

 *2. Class Plaintiffs Adequately Plead Justifiable Reliance.* – Willis NA challenges Class Plaintiffs' common law fraud and negligent misrepresentation claims for failure to allege justifiable reliance.  In order to plead justifiable reliance, a plaintiff must allege that he (1) actually relied on the information; and (2) the reliance was reasonable.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 501–02 (5th Cir. 2000).

 Class Plaintiffs allege actual reliance on the misrepresentations in Willis NA's safety and soundness letters.  *See* FAC ¶¶ 160, 162 (alleging continued reinvestment in Stanford CDs based on reissuance of safety and soundness letters).  The Court finds Willis NA's arguments regarding the time between Class Plaintiffs' first investment and Willis NA's first provision of coverage letters unconvincing.  Class Plaintiffs do not allege that they began investing because of Willis NA's letters, but that they continued to do so.  This is an adequate allegation of actual reliance.

 The Court also finds sufficient allegations to support the conclusion that Class Plaintiffs' reliance was reasonable.  Willis NA primarily argues that Class Plaintiffs cannot plead reasonable reliance because Class Plaintiffs could have verified the nature of the

insurance policies with minimal effort.  Yet Willis NA wrongly assumes the average investor maintains the same familiarity and comfort with insurance jargon as does an industry insider. Willis NA argues a quick consultation with an independent source would have revealed a banker's blanket bond does not provide deposit insurance.  But a reasonable investor might very well assume that a letter denoting insurance coverage related to an investment would not be distributed if it were not relevant to the security of the deposit.   Indeed, Class Plaintiffs allege this assumption was the entire basis of Stanford's marketing scheme, a scheme in which Willis NA was allegedly a knowing participant.  Willis NA fails to carry its burden in convincing this Court that Class Plaintiffs alleged reliance was by law unreasonable.

### F. Class Plaintiffs' Negligence Claims

***1. Class Plaintiffs Adequately Allege the Existence of Duty.*** – Although Willis NA is correct that in Texas, an insurance broker ordinarily has no duty to noninsureds, *see Brannan Paving GP, LLC v. Pavement Markings, Inc.*, 2013 WL 3832717, at *11 (Tex. App. – Corpus Christi 2013, pet. filed), that rule is not absolute.  As Class Plaintiffs point out, "[i]n Texas, it is well settled that, even in the absence of a duty to act, if one acts voluntarily, he must do so 'with due care and is generally liable for negligence.'" *BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC*, 901 F. Supp. 2d 884, 922 (S.D. Tex. 2012) (citing *Great Am. Mortg. Investors v. Louisville Title Ins. Co.*, 597 S.W.2d 425, 430 (Tex. Civ. App. – Fort Worth 1980, writ ref'd n.r.e.).  Here, Plaintiffs allege a broad marketing scheme whereby Willis NA knowingly provided its letters for distribution to investors as part

of a misleading and fraudulent marketing scheme.  Plaintiffs have adequately alleged that Willis NA acted in such a way as to undertake a duty of care with regard to the investors it knew would eventually receive its letters.

*2. Class Plaintiffs Adequately Plead a Claim for Negligent Retention/Negligent Supervision.* – Class Plaintiffs set forth facts and allegations sufficient to state a claim for Willis NA's negligent retention/negligent supervision of Baranoucky.  Class Plaintiffs allege a series of facts in which Baranoucky issued the misleading marketing letters to Stanford entities with little regard to the letters' deceptive nature or their potential impact on investors. Class Plaintiffs allege that Willis NA knew Baranoucky was undertaking this conduct, and thus breached its duty in failing to exercise due care in her supervision and retention.  FAC ¶ 205.  Accordingly, the Court holds Class Plaintiffs' have set forth a viable claim for negligent retention/negligent supervision against Willis NA.

### CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions in part and denies them in part.  The Court dismisses Nonclass Plaintiffs' civil conspiracy claims against all Defendants.  The Court dismisses Nonclass Plaintiffs' claims against Baranoucky for fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, and negligent retention/supervision.  The Court dismisses Class Plaintiffs' claims against Willis NA for primary violation of the TSA, and for civil conspiracy.  The Court denies Defendants' motions to dismiss in all other regards.  The Court grants Plaintiffs thirty (30) days to replead the dismissed claims if they should choose to do so.

Signed December 5, 2014.

David C. Godbey
United States District Judge