# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § § § | |
| | § § | |
| RALPH S. JANVEY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:13-CV-03980-N |
| WILLIS OF COLORADO INC., *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER APPROVING ATTORNEYS' FEES IN CONNECTION WITH THE SETTLEMENT WITH THE WILLIS DEFENDANTS

Before the Court is the Plaintiffs' Motion for Award of Attorneys' Fees and Expenses in connection with the settlement with the Willis Defendants. [*See SEC v. Stanford Int'l Bank, Ltd.,* No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC Action") ECF No. 2398, and *Janvey v. Willis of Colorado Inc.,* No. 3:13-cv-03980-N (N.D. Tex.) (the "Janvey Litigation") ECF No. 109].

Having considered the Motion, the Declarations submitted in support of the Motion, the arguments and the applicable legal authorities, the Court finds that the Plaintiffs' request for approval of attorneys' fees and expenses should be granted. The Court finds that the 25% contingency fee initially agreed to between the Receiver and Plaintiffs' Counsel is reasonable and consistent with the percentage charged and approved by courts in other cases of this magnitude

and complexity. The Court further finds that Plaintiffs' Counsel have agreed to a reduced fee equivalent to 22.32% of the recovery from the Willis Settlement instead of 25%. The Stanford Receivership and the Janvey Litigation are extraordinarily complex and time-consuming and have involved a great deal of risk and capital investment by Plaintiffs' Counsel as evidenced by the Declarations of Plaintiffs' Counsel submitted in support of the request for approval of their fees. Both the Motion and the declarations provide ample evidentiary support for the award of the Plaintiffs' attorneys' fees set forth in this Order.

"A litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Harmon,* No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. Apr. 14, 2011) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)).

One method for analyzing an appropriate award for Plaintiffs' attorneys' fees is the percentage method, under which the court awards fees based on a percentage of the common fund. *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642-43 (5th Cir. 2012). The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable." *Id.* at 643 (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson,* 488 F.2d at 717-19.

When considering fee awards in class action cases "district courts in [the Fifth] Circuit

regularly use the percentage method blended with a *Johnson* reasonableness check." *Id.* (internal citations omitted); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases). Both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the preferred method. *Dell*, 669 F.3d at 643; *Schwartz,* 2005 WL 3148350, at *25. In *Schwartz,* the court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. *Id.* Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recover." *Id.* at *26.

While the Willis and BMB Settlements are not class action settlements, because the settlement is structured as a settlement with the Receiver and the Committee, and bar orders precluding other litigation against Willis arising from the Stanford Ponzi scheme, this Court has analyzed the award of attorneys' fees to Plaintiffs' Counsel under both the common fund and the *Johnson* approach. Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 22.32% fee sought by Plaintiffs' Counsel pursuant to their fee agreements is reasonable and is hereby approved by the Court.

Having reviewed the Declarations of Plaintiffs' Counsel reflecting the investment of thousands of hours and millions of dollars of attorney time by Plaintiffs' Counsel in the Stanford Receivership as a whole and in the litigation against Willis and BMB specifically, the Court finds that the proposed 22.32% fee for Plaintiffs' Counsel is a reasonable percentage of the common fund (*i.e.* the $120,000,000 settlement). "The vast majority of Texas federal courts and courts in

this District have awarded fees of 25%–33% in securities class actions." *Schwartz*, 2005 WL 3148350, at *31 (collecting cases). "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Id*. The Court further finds that the fee is reasonable based upon the Court's analysis of the *Johnson* factors.

A review of the *Johnson* factors that are discussed at length in the Motion and supported by Plaintiffs' Counsel's Declarations also demonstrates that the proposed 22.32% fee is reasonable and should be approved. With respect to the time and labor required, Plaintiffs' Counsel invested a tremendous amount of time and labor in this case as reflected in the Snyder, Valdespino, Blakeway and Buncher Declarations filed in support of the Motion. Castillo Snyder served as lead counsel among Plaintiffs' Counsel for the Committee in the Janvey Litigation and for the Stanford Investors in the Troice Litigation. Castillo Snyder has close to $7 million invested in the Stanford cases overall since 2009, and 3,972.93 hours of unpaid attorney and paralegal time worth $2,313,076.67 at Castillo Snyder's applicable hourly rates invested specifically in the Janvey Litigation and the Troice Litigation. *See* Snyder Decl., at ¶ 41. Strasburger & Price also has thousands of hours and millions of dollars of time invested in pursuing claims against third parties related to the Stanford Receivership, and 4,683 hours of unpaid attorney and paralegal time worth $2,924,920 attributable to the Janvey Litigation and the Troice Litigation. *See* Valdespino Decl., at ¶ 41; Blakeway Decl. at ¶ 12. Neligan Foley served as lead counsel for the Receiver in the Janvey Litigation. Neligan Foley has nearly 7,000 hours and over $2.8 million worth of attorney and paralegal time invested in the Stanford lawsuits, including the Janvey Litigation and the Troice Litigation. Neligan Foley has over 1,167.4 hours of unpaid attorney and paralegal time worth $565,817.50 invested specifically in the Janvey Litigation and the Troice Litigation. *See* Buncher

Decl., at ¶ 18. Finally, Plaintiffs' Counsel retained Washington-based U.S. Supreme Court appellate counsel Tom Goldstein to assist them and serve as lead Supreme Court appellate counsel with respect to the SLUSA appeal before the U.S. Supreme Court and are contractually obligated to pay Mr. Goldstein's firm, Goldstein & Russell P.C., the sum of $334,000 in compensation for the work he performed on said appeal.

The issues presented in the Janvey Litigation and the Troice Litigation were novel, difficult and complex. Several of the complex legal and factual issues are outlined in the Plaintiffs' Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expense in Connection with the Settlement with the Willis and BMB Defendants. Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution, and settlement of this case required significant skill and effort on the part of Plaintiffs' Counsel. Although participation in the Janvey and Troice Litigation did not necessarily preclude Plaintiffs' Counsel from accepting other employment, the Declarations reveal that the sheer amount of time and resources involved in investigating, preparing, and prosecuting the Janvey Litigation and the Troice Litigation, as reflected by the hours invested by Plaintiffs' Counsel, significantly reduced Plaintiffs' Counsel's ability to devote time and effort to other matters.

The 22.32% fee requested is also substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. *See Schwartz*, 2005 WL 3148350, at *31 (collecting cases and noting that 30% is standard fee in complex securities cases). "Attorney fees awarded under the percentage method are often between 25% and 30% of the fund." *Klein*, 705 F. Supp. 2d at 675 (citing *Manual for Complex Litig. (Fourth)* § 14.121 (2010)); *see, e.g.*, *SEC v. Temme*, No.4:11-cv-00655-ALM, at *4–5 (E.D. Tex. November 21, 2012), ECF No. 162 (25% contingent fee for a $1,335,000

receivership settlement); *Billitteri v. Sec. Am., Inc.*, No. 3:09–cv–01568–F (lead case), 2011 WL 3585983, *4–9 (N.D. Tex. 2011) (25% fee for a $80 million settlement); *Klein*, 705 F. Supp. 2d at 675–81 (30% fee for a $110 million settlement).

At the time of the Settlement, Plaintiffs were not subject to significant time limitations in the Janvey Litigation and the Troice Litigation, as the Janvey Litigation has been essentially stayed while the parties awaited this Court's ruling on class certification and litigated the issue of attorney immunity in the Troice Litigation. However, and given the breadth and scope of activity in the Troice Litigation over the last 7 years, including almost non-stop heavy briefing and motion practice, including class certification discovery and briefing, an appeal to the Fifth Circuit, and an appeal to the U.S. Supreme Court, Plaintiffs' Counsel has been consistently under deadlines and time pressure for over 7 years. Had an investor class been certified, the Troice Litigation would have remained pending before the Court and would likely have taken years to resolve. Furthermore, given the magnitude and complexity of the cases, even if a trial in the Janvey Litigation was set a year in the future, Plaintiffs' Counsel would have been under significant time pressure to complete all the investigation and discovery to prepare the case for final hearing within a year.

The $132,850,000 to be paid by Willis and BMB represents a substantial settlement and value to the Receivership Estate. There will be approximately $100,000,000 available for distribution. Thus, the amount involved and results obtained also support approval of the requested fee. The Declarations of Plaintiffs' Counsel further reflect that Plaintiffs' Counsel have represented numerous receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford receivership proceeding. Plaintiffs' Counsel have been actively engaged in the Stanford

proceeding since its inception. Thus, the attorneys' experience, reputation and ability also support the fee award. Given the complexity of the issues in the Janvey Litigation and the Troice Litigation, the Settlement, as well as other settlements achieved by Plaintiffs' Counsel in the Stanford Receivership that have also been approved by this Court, are indicative of Plaintiffs' Counsel's abilities to obtain favorable results in these proceedings.

The nature and length of Plaintiffs' Counsel's professional relationship with the clients also supports the fee award. Plaintiffs' Counsel have represented the Receiver, the Committee, and Investor Plaintiffs in numerous actions pending before the Court in connection with the Stanford Receivership since 2009, all on the same 25% contingency fee arrangement.

Finally, awards in similar cases, with which this Court is familiar, as well as those discussed in the *Schwarz* opinion, all support the fee award. For example, a 25% contingency fee was previously approved as reasonable by this Court in its order approving the Receiver's agreement with the Committee regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the Committee (the "OSIC-Receiver Agreement"). *See* SEC Action ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* OSIC-Receiver Agreement SEC Action ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals). The Court also previously approved 25% contingency fee arrangements in connection with the BDO Settlement and the settlement with the Settling Defendants in the Adams & Reese and Kroll and Chadbourne cases. *See Official Stanford Inv'rs Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sep. 23, 2015), ECF No. 80; Order Approving Attorneys' Fees in *Ralph S. Janvey v. Adams & Reese, LLP*, Civil Action No. 3:12-CV-00495-B [SEC Action ECF. No. 2231]; *Kroll*, No. 3:09-cv-0298-N (N.D. Tex. Aug. 30,

2016) [SEC Action ECF No. 2364].

For these reasons, the Court finds that the 22.32% contingency fee requested in connection with the Willis Settlement is well within the range of reasonableness for cases of the magnitude and complexity of the Janvey Litigation and the Troice Litigation, and the Court hereby approves the award of Plaintiffs' attorneys' fees in the amount of $26,787,500 as requested in the Motion.

The Court further finds that the request for reimbursement of the litigation expenses advanced by the Receiver and Plaintiffs' Counsel contained within the Motion is reasonable and should be approved.

The Receiver is, therefore,

ORDERED to pay Plaintiffs' Counsel attorneys' fees in the amount of $26,787,500 upon receipt of the Willis Settlement Amount in accordance with the terms of the Settlement Agreements with the Willis Defendants

FURTHER ORDERED that reimbursement of the litigation expenses advanced by the Receiver and Plaintiffs' Counsel is approved. Expenses in the amount of $38,407.37 advanced by Castillo Snyder, $86,375.00 advanced by Strasburger & Price, and $1,959.55 advanced by Neligan Foley shall be reimbursed by the Receiver to those firms from the first settlement proceeds received by the Receiver from either the Willis or the BMB Settlements.

Signed on August 23, 2017.

_____
David C. Godbey
United States District Judge